UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MICHAEL GLENN,<br>    Plaintiff, | Case No. 1:22-cv-202 |
| vs. | Dlott, J.<br>Litkovitz, M.J. |
| C/O BASHAM,<br>    Defendant. | **ORDER AND REPORT AND RECOMMENDATION** |

Plaintiff, an inmate at the Southern Ohio Correctional Facility (SOCF), filed this pro se civil rights complaint pursuant to 42 U.S.C. § 1983 alleging a violation of his Eighth Amendment right to be free from an excessive use of force.[1] This matter is before the Court on defendant's motion for summary judgment (Doc. 37), plaintiff's response in opposition (Doc. 41), and defendant's reply memorandum (Doc. 42). In addition, plaintiff filed a motion to request the Court to seek new evidence (Doc. 45), which defendant opposed (Doc. 47). The Court will address these motions individually.

I.    Background

The parties agree that, on March 9, 2022, plaintiff intentionally overflowed the sink and toilet in his cell and disregarded direct orders to stop. Defendant Basham then sprayed plaintiff's face with OC spray (oleoresin capsicum spray sometimes called "pepper spray") and turned off the water supply to plaintiff's cell. (Doc. 37-2 at PAGEID 193; Doc. 41 at PAGEID 262). From this point, however, the parties' narratives diverge. According to defendant Basham's written report:

---

[1] Plaintiff's remaining claims were dismissed on sua sponte screening of the complaint pursuant to sections 804 and 805 of the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). (Docs. 6, 27).

> I could hear officer McCoy giving direct orders to [Glenn] to stop flooding while officer McCoy was trying to shut off the water supply to that cell. I officer Basham advised Lt. Osbourne that the inmate was flooding and then i went to the cell front and gave the inmate a direct order to stop but he continued to flood using his sink water. At this time i directed officer McCoy to open the hatch at which time the inmate began to kick water from under the cell door. At this time i officer Basham deployed O.C. spray to the facial area as he continued to flood his sink. At this point water was coming from under the cell door onto the range. I officer Basham then deployed O.C. spray again to the inmate but this time the inmate stopped flooding and Officer McCoy closed and locked the food hatch. The inmate again started to kick water under the cell door. At this time myself and officer McCoy exited the cell front.

(Doc. 37-4 at PAGEID 209).

Plaintiff alleges that he became compliant after being sprayed in the face, but defendant opened plaintiff's cuff port and intentionally sprayed OC spray at plaintiff's genitals in an effort to cause plaintiff pain. (Doc. 41 at PAGEID 262). According to plaintiff's signed statement made within twenty minutes of the events at issue:

> C/O Basham refused to give me clothes when I came off watch. I acted up. I was naked b/c I had no clothes to put on. He opens the shoot, sprays me directly in my penis, balls, and face. His body cam will show all this.

(Doc. 37-4 at PAGEID 205). The medical report of the incident provides that Glenn stated, "I'm alright, but I got sprayed in the dick." (*Id.* at PAGEID 206). The examining nurse observed "no injuries or acute distress." (*Id.*).

A witness, Corrections Officer Eric Brown, reported that after the water to plaintiff's cell was shut off, plaintiff Glenn began kicking his cell front. (Doc. 37-4 at PAGEID 203). When Glenn refused to stop kicking, another officer "popped I/M Glenns hatch and Officer Basham gave a burst of oc spray." (*Id.*). At that time, according to Brown, Glenn calmed down and no additional force was used. (*Id.*). Another witness, Corrections Officer John McCoy, reported that Glenn was flooding his cell and kicking water toward the officers. (Doc. 37-4 at PAGEID 204). McCoy further reported:

2

> While I was turning the water off C/O Basham came to I/M Glenn's cell and gave him a direct order to stop flooding and kicking water at myself and him [but] he didn't comply. I C/O McCoy then opened the food hatch and C/O Basham deployed O/C at I/M Glenn['s] facial area. No other force was used or witnessed.

(*Id.*).

Defendant Basham filed a body worn camera video of the March 9, 2022 events at issue. (Doc. 36). The entire recording lasts one minute and thirty-two seconds. (*Id.*). The recording begins at 12:22:50 on March 9, 2022. It depicts defendant leaving a small office, walking down the hall, and stopping in front of a cell in which a naked inmate (presumably plaintiff Glenn) is standing in a significant amount of water. Another corrections officer (presumably McCoy) appears to be in the process of turning off the water supply to the cell. At 12:23:11, the other officer uses his keys to open the cuff port of the inmate's cell. From 12:23:12 to 12:23:16, defendant's hand can be seen deploying a stream of OC spray through the cuff port and upward toward plaintiff's face. The cuff port is then closed from 12:23:18 through 12:23:21, and then it is reopened. From 12:23:22 through 12:23:23, defendant's hand can be seen deploying a second spray of OC before the other officer recloses and locks the cuff port. The OC spray does not appear to be employed at a significantly different angle, but the spray deploys with noticeably less force than the earlier spray. The inmate's bare buttocks is visible through the cuff port during both sprays. The video lacks audio so it is impossible to discern what, if any, words were exchanged during the incident. Once the cuff port is relocked, defendant looks inside the area adjacent to plaintiff's cell that contains the water controls and then returns to the office. The video concludes at 12:24:22.

Defendant has moved for summary judgment. (Doc. 37). Defendant contends that plaintiff can establish neither the subjective nor the objective component of an Eighth Amendment excessive force claim because defendant employed the OC spray in a good faith

3

effort to stop plaintiff from flooding his cell and/or kicking contaminated water onto the range rather than maliciously for the purpose of causing harm and because plaintiff suffered only de minimis injury.[2] (Doc. 37 at PAGEID 185-90). Plaintiff responds that the second OC spray constituted excessive force "for no reason" because the water to his cell had been turned off and he "was no longer a threat to anyone." (Doc. 41 at PAGEID 262).

In addition, plaintiff has moved for the Court to seek new evidence. (Doc. 45). Plaintiff contends that there was an additional interaction between plaintiff and defendant in which defendant opened the cuff port and employed his partner's OC spray directly to plaintiff's genitals. (Doc. 45 at PAGEID 285-86). Defendant responds that he has provided "all video that was deemed relevant and saved per policy." (Doc. 47 at PAGEID 293).

## II. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Id.*; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v.*

---

[2] In his reply brief, defendant argues that plaintiff cannot establish a First Amendment retaliation claim. (Doc. 42 at PAGEID 271-72). Although plaintiff used the word "retaliation" in his response memorandum while referring to defendant's actions, the only claim remaining in this action is plaintiff's Eighth Amendment excessive force claim. (Docs. 6, 27).

4

*OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000). "[W]here, as here, the parties present video evidence, [the Court] 'view[s] the facts in the light depicted by the videotape.'" *Ison v. Madison Loc. Sch. Dist. Bd. of Ed.*, 3 F.4th 887, 892 (6th Cir. 2021) (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)); *White v. Erdos*, No. 21-3169, 2022 WL 554065, at *2 (6th Cir. Jan. 28, 2022).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. However, "[f]acts that are not blatantly contradicted by [the evidence] remain entitled to an interpretation most favorable to the non-moving party." *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011). "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

5

A fact is "material" if its resolution will affect the outcome of the lawsuit. *Beans v. City of Massillon*, No. 5:15-cv-1475, 2016 WL 7492503, at *5 (N.D. Ohio Dec. 30, 2016), *aff'd,* No. 17-3088, 2017 WL 3726755 (6th Cir. 2017) (citing *Anderson*, 477 U.S. at 248). The party who seeks summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 322. To make its determination, the court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter the party's duty on a summary judgment motion to support his factual assertions with admissible evidence. *Maston*, 832 F. Supp. 2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)).

### III. Evidentiary Issues

Plaintiff has filed a motion to request the courts to seek new evidence (Doc. 45). In his motion, plaintiff alleges that he was shown 25-30 seconds of Basham's body cam footage, but the footage he viewed does not depict the "second time when c/o Basham had to use his partners can of O.C. because his was empty." (*Id.* at PAGEID 285). According to plaintiff, there was

6

"another minimum of two minutes worth of footage" before supervisors arrived, gave plaintiff some clothing, and took him out of the cell block. (*Id.*). In response, defendant's counsel states that she "has inquired about any other video that was saved and was told that we have been provided all video that was deemed relevant and saved per policy." (Doc. 47 at PAGEID 293). Plaintiff has not filed a reply memorandum in support of his request for additional discovery nor has he offered evidence disputing defense counsel's representation that no other video was preserved.

> Federal Rule of Civil Procedure 56(d) provides:
>
> **When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

The party seeking additional discovery bears the burden of showing why the requested discovery is necessary. *King v. Harwood*, 852 F.3d 568, 579 (6th Cir. 2017).

The Sixth Circuit has "observed that filing an affidavit that complies with Rule 56(d) is essential, and that in the absence of such a motion or affidavit, 'this court will not normally address whether there was adequate time for discovery.'" *Unan v. Lyon*, 853 F.3d 279, 292 (6th Cir. 2017) (quoting *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196 (6th Cir. 1995)). Generally, this affidavit or declaration "must 'indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information.'" *Id.* at 292-93 (quoting *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000)). *See also Zakora v. Chrisman*, 44 F.4th 452, 479 (6th Cir. 2022), *cert. denied sub nom.*, *Chrisman v. Est. of Zakora*, 143 S. Ct. 2608 (2023) (summary judgment proper in § 1983 case even though estate of the deceased inmate had no opportunity for discovery where plaintiff's Rule 56(d)

7

affidavit contained only general and conclusory statements regarding need for more discovery and failed to show how an extension of discovery would have revealed evidence necessary to support its claims). Nevertheless, the Sixth Circuit has excused the affidavit requirement "when a party has clearly explained its need for more discovery on a particular topic to the district court prior to or contemporaneously with the motion for summary judgment." *Unan*, 853 F.3d at 293 (quoting *United States v. Rohner*, 634 F. App'x 495, 504 (6th Cir. 2015)).

The Court declines to extend discovery in this matter. First, plaintiff had ample time to conduct discovery in accordance with the Court's calendar order. (Doc. 28). He filed what the Court construed as a motion to compel discovery (Doc. 33), which included a request for any video evidence, but the Court denied the motion because plaintiff failed to serve the discovery requests on defendant's counsel. (Doc. 44). The Court notes that plaintiff is proceeding pro se, but defendant's counsel, in responding to plaintiff's motion approximately one month before the discovery deadline in this case, informed plaintiff that discovery requests must be directed to defendant's counsel and provided her address. (Doc. 34 at PAGEID 170-71).

Second, the Court notes that the video defendant filed with the Court contains one minute and thirty-two seconds of footage, approximately one minute more than the 25-30 second video plaintiff alleges that he viewed. (Docs. 36, 45). In addition, the body cam video defendant submitted in support of his motion for summary judgment depicts two incidents of defendant deploying OC spray into plaintiff's cell through his cuff port (*Id.* at 12:23:12 and 12:23:22) before ensuring the water to plaintiff's cell was turned off and returning to his office. There is no further video after defendant reenters his office. Defendant's counsel states that after further inquiry, no such additional video exists. (Doc. 47 at PAGEID 293). Plaintiff has not disputed this representation, and there is nothing in the record to suggest the Court should doubt counsel's

representation. The Court cannot order defendant to produce video evidence that does not exist. *See Solly v. Mausser*, No. 2:15-cv-956, 2017 WL 4280935, at *2 (S.D. Ohio Sept. 27, 2017) (and cases cited therein). Thus, staying a ruling on the motion for summary judgment to allow plaintiff to conduct discovery would be a futile gesture. Under the circumstances presented, the Court declines to order additional discovery in this matter, and plaintiff's motion (Doc. 45) will be denied.

### IV. Eighth Amendment Claim

Plaintiff initiated this action pursuant to 42 U.S.C. § 1983, which prohibits any person "under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving a United States citizen "of any rights, privileges or immunities secured by the constitution and laws." To prevail on a § 1983 claim, a plaintiff must demonstrate "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

A convicted prisoner's right to be free from the use of excessive force by a prison official is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The "core judicial inquiry" whenever a prison official stands accused of using excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Eighth Amendment excessive force claims include both a subjective and an objective component. *Cordell v. McKinney*, 759 F.3d 573, 580-81 (6th Cir. 2014); *see also White v. Erdos*, No. 21-3169, 2022 WL 554065 (6th Cir. Jan. 28, 2022). The subjective component

9

focuses on the prison official's state of mind, while the objective component analyzes whether the pain inflicted on the prisoner was "sufficiently serious." *Cordell*, 759 F.3d at 580. In making this inquiry, the Court must consider the need for the use of force; the relationship between that need and the type and amount of the force used; the threat reasonably perceived by the responsible official; and the extent of the injury inflicted. *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 320-321. Corrections officers do not violate a prisoner's Eighth Amendment rights when they use force "in a good-faith effort to maintain or restore discipline." *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell,* 93 F. App'x 723, 725 (6th Cir. 2004)) (defendant corrections officers applied force—spraying the prisoner with pepper spray—in a "good faith effort to maintain or restore discipline, not to maliciously cause pain," where the prisoner repeatedly disobeyed the officers' direct orders to "sit cross-legged on his bunk and face the wall").

"While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Cordell*, 759 F.3d at 580-81 (citing *Wilkins*, 559 U.S. at 37). "When prison officials maliciously and sadistically use force to cause harm . . ., contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Wilkins,* 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 9). The absence of a serious injury is nonetheless relevant as a factor that suggests whether the use of force may "plausibly have been thought necessary" in a given situation. *Id*. (quoting *Hudson,* 503 U.S. at 7). "[D]e minimis uses of physical force do not satisfy the objective component, as long as the use of force is not of a sort repugnant to the conscience of mankind." *Bullocks v.*

10

*Hale*, No. 20-3428, 2021 WL 1578198, at *2 (6th Cir. Mar. 1, 2021) (quoting *Hudson v. McMillian*, 503 U.S. 1, 10 (1992) (internal quotation marks omitted).

In this case, the parties agree that plaintiff flooded his cell, and plaintiff concedes that defendant's initial use of OC spray does not violate his Eighth Amendment rights. (Doc. 41 at PAGEID 262). Defendant's body cam video shows defendant spraying plaintiff a second time ten seconds later while water continued to overflow from plaintiff's sink and onto the floor. (Doc. 36 at 12:23:22). The other officer then closed the cuff port, and defendant checked the water controls to plaintiff's cell before returning to his office. (Doc. 36). The body cam video depicts a good faith effort to maintain or restore discipline, and nothing on the video appears to be malicious or sadistic.

Plaintiff alleges that "once defendant sprayed him in the face, and turned his water off, he was no longer a threat to anyone, so by defendant Basham opening his cuff port, pointing his can of OC at plaintiff's genital/private area and unloading the powerful chemical into his private parts" defendant violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. (Doc. 41 at PAGEID 262). Plaintiff later stated that he was "suing for the second time when c/o Basham had to use his partner's can of OC because his was empty." (Doc. 45 at PAGEID 285). Plaintiff's allegations fail to preclude a summary judgment recommendation for two reasons. First, plaintiff offers absolutely no evidence in support of his claims. He filed no affidavit or sworn declaration. Plaintiff's signed statement immediately following the incident indicates that he was naked, "acted up," and Basham opened his cuff port, and sprayed him in his private area and face. (Doc. 37-4 at PAGEID 205). That statement is consistent with the dash cam video. Because the cuff port is below waist level and because plaintiff was naked at the time, it is highly likely that some of the OC spray impacted his genital area. Although an

11

undoubtedly uncomfortable experience, the video shows Basham pointing the OC spray upward from the cuff port both times. Second, although plaintiff alleges that he was "no longer a threat" once his water was turned off, the video clearly depicts water continuing to overflow from plaintiff's sink as defendant deployed the second spray from his OC canister. Thus, there is no evidence to support plaintiff's allegation that Basham intentionally sprayed his genitals in a malicious effort to cause pain rather than in a good faith effort to restore discipline. Accordingly, defendant Basham is entitled to summary judgment.

**IT IS THEREFORE ORDERED THAT:**

Plaintiff's motion to request the Court to seek new evidence (Doc. 45) is **DENIED**.

**IT IS THEREFORE RECOMMENDED THAT:**

Defendant's motion for summary judgment (Doc. 37) be **GRANTED**.

Date: 2/26/2024

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL GLENN,  
    Plaintiff,

vs.

C/O BASHAM,  
    Defendant.

Case No. 1:22-cv-202

Dlott, J.  
Litkovitz, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).