IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Michael H. Glenn, | : | Case No. 1:22-cv-202 |
| | : | |
| Plaintiff, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | Order Adopting Report and |
| | : | Recommendation and |
| C/O Tim Basham, *et al.* | : | Granting Defendant's Motion for |
| | : | Summary Judgment |
| Defendants. | : | |

This matter is before the Court on the Order and Report and Recommendation ("Order and R&R") (Doc. 48) issued by Magistrate Judge Karen L. Litkovitz on February 26, 2024. The Magistrate Judge ordered that Plaintiff Michael H. Glenn's Motion to Request the Courts to Seek New Evidence (Doc. 45) was denied. She recommended that Defendant C/O Tim Basham's Motion for Summary Judgment (Doc. 37) be granted. For the reasons that follow, the Court will **ADOPT** the Order and R&R and grant summary judgment to Basham.

I. BACKGROUND

A. Factual History

The Court reiterates the Statement of Facts set forth in the Order and R&R:

[At all times relevant to this lawsuit, Glenn was an inmate and Basham was a corrections officer at the Southern Ohio Correctional Facility.] The parties agree that, on March 9, 2022, Plaintiff intentionally overflowed the sink and toilet in his cell and disregarded direct orders to stop. Defendant Basham then sprayed plaintiff's face with OC spray (oleoresin capsicum spray sometimes called "pepper spray") and turned off the water supply to plaintiff's cell. (Doc. 37-2 at PAGEID 193; Doc. 41 at PAGEID 262). From this point, however, the parties' narratives diverge. According to Defendant Basham's written report:

> I could hear officer McCoy giving direct orders to [Glenn] to stop flooding while officer McCoy was trying to shut off the water supply to that cell. I officer Basham advised Lt. Osbourne that the inmate was flooding and then i went to the cell front and gave the inmate a direct order to stop but

1

> he continued to flood using his sink water. At this time i directed officer McCoy to open the hatch at which time the inmate began to kick water from under the cell door. At this time i officer Basham deployed O.C. spray to the facial area as he continued to flood his sink. At this point water was coming from under the cell door onto the range. I officer Basham then deployed O.C. spray again to the inmate but this time the inmate stopped flooding and Officer McCoy closed and locked the food hatch. The inmate again started to kick water under the cell door. At this time myself and officer McCoy exited the cell front.

(Doc. 37-4 at PAGEID 209).[1]

Plaintiff alleges that he became compliant after being sprayed in the face, but Defendant opened plaintiff's cuff port and intentionally sprayed OC spray at plaintiff's genitals in an effort to cause plaintiff pain. (Doc. 41 at PAGEID 262). According to plaintiff's signed statement made within twenty minutes of the events at issue:

> C/O Basham refused to give me clothes when I came off watch. I acted up. I was naked b/c I had no clothes to put on. He opens the shoot, sprays me directly in my penis, balls, and face. His body cam will show all this.

(Doc. 37-4 at PAGEID 205). The medical report of the incident provides that Glenn stated, "I'm alright, but I got sprayed in the dick." (*Id.* at PAGEID 206). The examining nurse observed "no injuries or acute distress." (*Id.*).

A witness, Corrections Officer Eric Brown, reported that after the water to plaintiff's cell was shut off, plaintiff Glenn began kicking his cell front. (Doc. 37-4 at PAGEID 203). When Glenn refused to stop kicking, another officer "popped I/M Glenns hatch and Officer Basham gave a burst of oc spray." (*Id.*). At that time, according to Brown, Glenn calmed down and no additional force was used. (*Id.*). Another witness, Corrections Officer John McCoy, reported that Glenn was flooding his cell and kicking water toward the officers. (Doc. 37-4 at PAGEID 204). McCoy further reported:

> While I was turning the water off C/O Basham came to I/M Glenn's cell and gave him a direct order to stop flooding and kicking water at myself and him [but] he didn't comply. I C/O McCoy then opened the food hatch and C/O Basham deployed O/C at I/M Glenn['s] facial area. No other force was used or witnessed.

(*Id.*).

---

[1] The Court notes that the video recording of the incident contradicts Basham's report insofar as it does not show Glenn kicking water from under the cell door at the time Basham first sprayed Glenn. It is possible that Glenn kicked water when the camera was not pointed at him. Nonetheless, the recording does show water continuing to flow from the sink area to the floor both times Basham deployed the OC spray.

> Defendant Basham filed a body worn camera video of the March 9, 2022 events at issue. (Doc. 36). The entire recording lasts one minute and thirty-two seconds. (*Id.*). The recording begins at 12:22:50 on March 9, 2022. It depicts defendant leaving a small office, walking down the hall, and stopping in front of a cell in which a naked inmate (presumably plaintiff Glenn) is standing in a significant amount of water. Another corrections officer (presumably McCoy) appears to be in the process of turning off the water supply to the cell. At 12:23:11, the other officer uses his keys to open the cuff port of the inmate's cell. From 12:23:12 to 12:23:16, defendant's hand can be seen deploying a stream of OC spray through the cuff port and upward toward plaintiff's face. The cuff port is then closed from 12:23:18 through 12:23:21, and then it is reopened. From 12:23:22 through 12:23:23, defendant's hand can be seen deploying a second spray of OC before the other officer recloses and locks the cuff port. The OC spray does not appear to be employed at a significantly different angle, but the spray deploys with noticeably less force than the earlier spray. The inmate's bare buttocks is visible through the cuff port during both sprays. The video lacks audio so it is impossible to discern what, if any, words were exchanged during the incident. Once the cuff port is relocked, defendant looks inside the area adjacent to plaintiff's cell that contains the water controls and then returns to the office. The video concludes at 12:24:22.

(Doc. 48 at PageID 295–297.)

**B.     Procedural History**

The only claim that remains in this lawsuit after the initial pleading stage is Glenn's claim that Basham violated his Eighth Amendment right to be free from the use of excessive force. (Doc. 27.) The Magistrate Judge set a six-month discovery period for the lawsuit that ended on July 11, 2023. (Doc. 28.) The deadline to file dispositive motions was August 11, 2023. (*Id.*) Basham filed his Motion for Summary Judgment on August 11, 2023. (Doc. 37.) Almost two months later, on October 5, 2023, Glenn filed the Motion to Request the Court to Seek New Evidence requesting that Basham produce additional video recording of the incident. (Doc. 45.) The parties were given the opportunity to fully brief both Motions.

Magistrate Judge Litkovitz issued her Order and R&R on February 26, 2024. (Doc. 48.) She ordered that Glenn's request for additional discovery be denied for several reasons, including that the discovery period had passed and that there was no evidence that an additional

3

video recording of the incident existed. (*Id.* at PageID 301–303.) She also recommended that the Court grant summary judgment to Basham on the Eighth Amendment use of excessive force claim. She concluded that the recording of the incident established that Basham's decision to deploy OC spray at Glenn two times was a good-faith effort to restore discipline and not excessive. (*Id.* at PageID 303–306.) Finally, Magistrate Judge Litkovitz informed the parties that objections to the Order and R&R were due within fourteen days. (*Id.* at PageID 307.) No objections have been filed.

The Clerk of Court attempted to serve the Order and R&R on Glenn by mail at the Southern Ohio Correctional Facility. It was returned as undeliverable on March 5, 2024. (Doc. 49.) The Ohio Department of Rehabilitation and Correction website indicates that Glenn was released from prison on February 6, 2024. ODRC, Offender Details, https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A705353 (last viewed 3/13/2024). Glenn has not provided the Clerk of Court with an updated address at which he can be served. The Magistrate Judge instructed Glenn at the beginning of this case to keep the Court notified of any change of address. "Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit." (Doc. 6 at PageID 41.) Glenn's failure to update the Court about his change of address does not excuse his duty to comply with filing deadlines. *See Lucas v. Farley*, No. 0:22-ccv-10, 2022 WL 4125074, at *1 (E.D. Ky. Sept. 9, 2022) (dismissing case for failure to prosecute when plaintiff failed to update court with change of address); *Oesch v. Ohio Dep't of Corr.*, No. 2:19-cv-1758, 2019 WL 2289836, at *1 (S.D. Ohio May 29, 2019) (adopting R&R after plaintiff failed to update his address, did not receive service of the R&R, and did not file objections to the R&R).

4

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 636(b)(1)(A) and Rule 72(a) of the Federal Rules of Civil Procedure authorize magistrate judges to decide nondispositive matters which have been referred to them. A party's failure to timely object to a written order on a nondispositive matter forfeits any error. Fed. R. Civ. P. 72(a). Likewise, 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b)(1) authorize magistrate judges to make recommendations concerning dispositive motions that have been referred to them. When no objections are filed, "[t]here is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review [the] magistrate's report." *Thomas v. Arn*, 474 U.S. 140, 152 (1985); *see also Weir v. Centurion*, No. 3:19-CV-00131, 2021 WL 5165930, at *1 (M.D. Tenn. Nov. 5, 2021) ("The district court is not required to review, under a de novo or any other standard, those aspects of the report and recommendation to which no objection is made."). Nonetheless, some district courts follow the Advisory Committee Notes to Rule 72(b) and review the report and recommendation for clear error. *See e.g.*, *Roane v. Warden of Corr. Reception Ctr.*, No. 2:22-CV-2768, 2022 WL 16535903, at *1 (S.D. Ohio Oct. 28, 2022); *Lassiter v. Dullaghan*, No. 1:10-CV-010, 2011 WL 110259, at *1 (S.D. Ohio Jan. 13, 2011). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1) (substantively similar).

## III. ANALYSIS

Glenn did not file objections to the Order and R&R. He has forfeited the right to assign any error to the Order and R&R to the extent that Magistrate Judge Litkovitz denied the nondispositive Motion to Request the Court to Seek New Evidence. Fed. R. Civ. P. 72(a). As to

5

Magistrate Judge Litkovitz's recommendation to grant summary judgment to Basham, the Court finds no clear error. She has accurately described the events surrounding the incident as demonstrated in the prison reports and the recording and reasonably applied the correct law. The Court will adopt her recommendation and grant summary judgment to Basham.

## IV. CONCLUSION

Accordingly, the Court **ADOPTS** the recommendation in the Order and R&R (Doc. 48) and **GRANTS** Basham's Motion for Summary Judgment (Doc. 37).

**IT IS SO ORDERED.**

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge